# Exhibit A

585 F.Supp.3d 49
United States District Court, District of Columbia.

Jane DOE, Plaintiff,
v.
Alejandro MAYORKAS, Secretary, U.S. Department of Homeland Security, et al., Defendants.

Civil Action No. 20-2521 (JDB)
|
Signed 02/11/2022

**Synopsis**
**Background:** Applicant, a Honduran national who had been declared to be dependent upon Texas juvenile court, brought action under Administrative Procedure Act (APA) challenging decision by United States Citizenship and Immigration Services (USCIS) denying her application for Special Immigrant Juvenile Status (SIJS). Applicant moved and government cross-moved for summary judgment.

**Holdings:** The District Court, John D. Bates, J., held that:

Texas state court's declaration constituted "declaration of dependency on a juvenile court" within meaning of SIJS statute;

USCIS's determination that dependency petition was not bona fide was change in policy that agency was required to explain; and

supplementation of administrative record to include evidence of policy change was warranted.

Plaintiff's motion granted; defendants' motion denied.

**Procedural Posture(s):** Review of Administrative Decision; Motion for Summary Judgment.

**Attorneys and Law Firms**

 *51  Garret G. Rasmussen, Sarah Hartman Sloan, Pro Hac Vice, Orrick, Herrington & Sutcliffe LLP, Washington, DC, Rebecca L. Greene, Pro Hac Vice, Orrick, Herrington & Sutcliffe LLP, New York, NY, for Plaintiff.

Michael A. Tilghman, II, Joseph F. Carilli, Jr., U.S. Attorney's Office for the District of Columbia, Washington, DC, for Defendants Alejandro J. Mayorkas, Department of Homeland Security, Kenneth T. Cuccinelli, II, U.S. Citizenship and Immigration Services.

### MEMORANDUM OPINION

JOHN D. BATES, United States District Judge

 **\*1**  Plaintiff Jane Doe is a Honduran national who came to the United States in 2015  *52  at the age of sixteen. After U.S. Customs and Border Protection placed her in removal proceedings, Doe sought and received a judgment from the 315th Judicial District Court in Harris County, Texas (the "Texas Court") declaring her "dependent upon th[e] juvenile court in accordance with the laws of the State of Texas." J.A. to Pl.'s Mot. for Summ. J. & Defs.' Cross-Mot. for Summ. J. (Redacted), Vol. II [ECF No. 33] ("J.A. II") at 184–85. Based on the Texas Court's declaration, Doe then applied for Special Immigrant Juvenile Status ("SIJS") with U.S. Citizenship and Immigration Services ("USCIS"). Had Doe's petition for SIJS been granted, she would have been eligible to receive a visa. But USCIS denied her application, and USCIS's Administrative Appeals Office ("AAO") upheld the denial on administrative appeal.

Doe filed suit in this Court challenging the denial of her appeal as arbitrary, capricious, and contrary to law under the Administrative Procedure Act, 5 U.S.C. §§ 701–06, and moved for summary judgment on her claims. The government filed a cross-motion for summary judgment, asserting that the denial was lawful and appropriate. The party's cross-motions have been fully briefed and are ripe for this Court's review. For the reasons explained below, the Court will grant Doe's motion for summary judgment, deny the government's cross-motion, and remand to the agency for further consideration.

### Background

#### I. Statutory Framework
The Immigration and Nationality Act ("INA") extends SIJS to certain at-risk migrant children in the United States who have been estranged from one or both of their parents due to abuse, abandonment, or neglect. See 8 U.S.C. § 1101(a)(27)(J). There are five statutory requirements for an immigrant to obtain SIJS:

(1) The immigrant must have been "declared dependent on a juvenile court located in the United States";[1]

(2) Reunification of the immigrant with one or both parents must not be viable "due to abuse, neglect, abandonment, or a similar basis found under State law";

(3) An administrative or judicial tribunal must determine that it would not be in the immigrant's best interest to return to his or her home country;

(4) The immigrant must be under twenty-one years old and unmarried at the time he or she applies for SIJS; and

(5) The Secretary of Homeland Security must consent to the grant of SIJS.

See id. § 1101(a)(27)(J); 8 C.F.R. § 204.11(c). A petitioner who obtains SIJS is eligible for a visa. 8 U.S.C. § 1153(b)(4).

These requirements have evolved over the years since Congress first established SIJS. At its inception in 1990, SIJS was available only to immigrant children deemed eligible for long-term foster care. See Immigration Act of 1990, Pub. L. No. 101-649, § 153, 104 Stat. 4978, 5005 (requiring immigrant to be "declared dependent on a juvenile court located in the United States and ... deemed eligible by that court for long-term foster care" (emphasis **\*53** added)); Immigration and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-416, § 219, 108 Stat. 4305, 4316. In 1998, SIJS eligibility was narrowed to require that the applicant's long-term foster-care eligibility be based on a finding of "abuse, neglect, or abandonment" and that "the Attorney General expressly consent[ ] to the dependency order serving as a precondition to the grant of [SIJS]." Act of Nov. 26, 1997, Pub. L. No. 105-119, § 113, 111 Stat. 2440, 2460.

**\*\*2** But in 2008, as part of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), Pub. L. No. 110-457, § 235(d)(1), 122 Stat. 5044, 5079–80, Congress expanded SIJS eligibility. The long-term foster care requirement was eliminated—after 2008, an immigrant is eligible for SIJS if a juvenile court either finds that the immigrant is dependent on the court or commits the immigrant to state custody, so long as "reunification with [one] or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law." Id. § 235(d)(1)(A). Further, the TVPRA altered the consent requirement: instead of requiring that the Attorney General "expressly consent[ ] to the dependency order serving as a precondition" to SIJS, the statute now simply requires that "the Secretary of Homeland Security consent[ ] to the grant of [SIJS]." Id. § 235(d)(1)(B)(i).

**II. Factual Background**

The basic facts are not disputed. See J.A. to Pl.'s Mot. & Defs.' Cross-Mot. (Redacted) Vol. I [ECF No. 32-1] ("J.A. I") at 6–7. Plaintiff Jane Doe was born in Honduras in 1998. Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") [ECF No. 20] at 7; J.A. I at 83. She suffered a difficult and traumatic upbringing. Her father was not part of her early childhood, and she lived with her mother. Pl.'s Mot. at 7–8; J.A. I at 83–84. When Doe was around fourteen years old, her mother began dating the man who would eventually become her stepfather. Pl.'s Mot. at 8; J.A. II at 157. He sexually abused Doe when she was around fifteen years old; her mother believed the stepfather's denial and refused to support Doe, causing Doe to leave her mother's home. Pl.'s Mot. at 8; J.A. II at 156–57. She moved in with her father, stepmother, younger stepsister, and two older young-adult stepbrothers. Pl.'s Mot. at 8; J.A. II at 159. One of her stepbrothers raped Doe on her first night at her father's house, and when her father did not take sufficient action to make Doe feel safe in his home, she returned to live with her mother and stepfather. Pl.'s Mot. at 8–9; J.A. II at 159–60. There, her stepfather's sexual harassment continued, fueled by his drinking. Pl.'s Mot. at 9; J.A. II at 160–61. Eventually, the situation became unbearable for Doe and she decided to leave Honduras. Pl.'s Mot. at 9; J.A. II at 161.

Doe migrated to the United States in 2015 at age sixteen. Pl.'s Mot. at 7; Mem. of P. & A. in Supp. of Defs.' Cross-Mot. for Summ. J. & Resp. in Opp'n to Pl.'s Mot. for Summ. J. ("Defs.' Cross-Mot.") [ECF No. 26-1] at 2. Shortly after she entered the country, CBP placed Doe into removal proceedings and transferred her to the custody of the Office of Refugee Resettlement. Defs.' Cross-Mot. at 2.[2] She was released to the custody of a sponsor in January 2016. Id.

In May 2016, Doe petitioned the Texas Court to declare, pursuant to the Texas **\*54** Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code § 37.004, that she was dependent upon the juvenile court; that reunification with her parents was not viable due to abuse, neglect, abandonment, or a similar basis under Texas law; and that it was not in her best interest to be returned to Honduras. See J.A. II at 106–07 (citing Tex. Fam. Code §§ 152.102(1), 153.005(c)(2), 261.001(1), (4)).[3] Doe submitted an affidavit detailing the

mistreatment she had suffered in Honduras and her strained relationships with her parents. See Pl.'s Mot. at 7; J.A. II at 110–19. In September 2016, the Texas Court held a hearing on the petition and took judicial notice of the affidavit, and Doe testified under oath about her abuse. See Pl.'s Mot. at 10; J.A. II at 122–30. At the conclusion of the hearing, the Texas Court granted Doe's petition. Citing Texas Family Code §§ 15[2].102(1), 2[6]1.001(1), (4),[4] the court issued a judgment declaring Doe dependent on the court and finding that she was abused and neglected by her parents, that reunification with her parents was not feasible, and that it was not in her best interest to be returned to Honduras. J.A. II at 185–86. In an oral statement at the end of the declaratory judgment hearing, the Texas Court also concluded that Doe was "entitled to Special Immigrant Status as defined by [8 U.S.C. § 1101(a)(27)(J)]." Id. at 128–29.

**\*\*3** After obtaining the declaratory judgment, Doe filed a Form I-360 Petition for SIJS and a certified copy of the Texas Court's judgment with the Houston Field Office of USCIS ("Field Office") in September 2016. See Defs.' Cross-Mot. at 4; J.A. II at 170–88. In November 2016, Doe appeared with her counsel for an interview regarding her eligibility for SIJS. J.A. I at 84. The Field Office then issued a Notice of Intent to Deny Doe's petition on two grounds in May 2018: (1) that Doe's declaratory judgment was not a "qualifying" dependency declaration because the Texas Uniform Declaratory Judgments Act was not a proper mechanism for obtaining such a declaration, J.A. I at 87–89; and (2) that USCIS's consent was not warranted because Doe sought the declaratory judgment "primarily or solely to obtain an immigration benefit," id. at 86–87 (quoting 6 USCIS Policy Manual, pt. J, ch. 2, § D.5). The Field Office invited Doe to submit additional supporting information, id. at 89–90, and she provided certified copies of her declaratory judgment petition and supporting affidavit, as well as an official transcript of the declaratory judgment hearing. See J.A. II at 92–102; Pl.'s Mot. at 12–13.

Two months later, the Field Office denied Doe's petition on the two grounds it had previously indicated. See Pl.'s Mot. at 13; J.A. I at 71–78. Doe appealed the denial to AAO and, in February 2019, AAO issued a final decision denying Doe's petition for SIJS. See J.A. I at 3–7. AAO first concluded that there was "no qualifying declaration of dependency," id. at 4: the Texas Court's declaratory judgment, it **\*55** wrote, "did not specify the state child welfare law that it applied," and the Texas Uniform Declaratory Judgments Act "does not describe juvenile dependency proceedings or otherwise address the care and custody of juveniles" but provides only "a general right to obtain a declaratory judgment," id. at 5. AAO also determined that USCIS's "consent was not warranted" because there was insufficient evidence that the declaratory judgment was bona fide. Id. at 6. AAO noted that the "hearing transcript mirrors the contents of the Declaratory Judgment," which also "mirrors" Doe's petition for a declaratory judgment. Id. at 4. For that reason, and because the Texas Court orally found that Doe was "entitled to Special Immigrant Status," AAO concluded that the hearing and declaratory judgment "principally concerned" Doe's eligibility for SIJS, "as opposed to a request for protection under state child welfare laws." Id. at 6. AAO dismissed Doe's appeal.

Doe filed this action on September 8, 2020, alleging that USCIS's decision to deny her petition for SIJS was arbitrary, capricious, and contrary to law. See Compl. [ECF 3] at ¶¶ 91–123. Both parties have moved for summary judgment; supplemental briefs have been filed at the direction of the Court, and the motions are now fully briefed and ripe for decision.

## Legal Standard

A party is entitled to summary judgment where the pleadings and evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a case involving review of a final agency action under the APA, the district court "sits as an appellate tribunal," as "[t]he 'entire case' on review is a question of law." Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083 (D.C. Cir. 2001). In such a proceeding, summary judgment is "the mechanism for deciding whether as a matter of law the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." Doe v. USCIS, 239 F. Supp. 3d 297, 305 (D.D.C. 2017) (quoting Se. Conf. v. Vilsack, 684 F. Supp. 2d 135, 142 (D.D.C. 2010)).

The APA requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, ... or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In making decisions, an agency "must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463

U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (quoting Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962)). An agency decision is arbitrary and capricious if, among other things, the agency's explanation "runs counter to the evidence before the agency." Id. And as part of the general "requirement that an agency provide reasoned explanation for its action," an agency "may not ... depart from a prior policy sub silentio." FCC v. Fox Television Stations, Inc., 556 U.S. 502, 515, 129 S.Ct. 1800, 173 L.Ed.2d 738 (2009). Instead, it "must at least 'display awareness that it is changing its position' and 'show that there are good reasons for the new policy.'" Encino Motorcars, LLC v. Navarro, 579 U.S. 211, 221, 136 S.Ct. 2117, 195 L.Ed.2d 382 (2016) (quoting Fox Television, 556 U.S. at 515, 129 S.Ct. 1800).

**\*\*4** "In determining whether an agency has provided a reasoned explanation for departing from precedent or treating similar situations differently, the court **\*56** looks only to the reasons given by the agency." ANR Pipeline Co. v. FERC, 71 F.3d 897, 901 (D.C. Cir. 1995). The final administrative decision—in this case AAO's decision denying Doe's administrative appeal—is the subject of the court's review; "counsel's post hoc rationalizations are not a substitute, for 'an agency's discretionary order [will] be upheld, if at all, on the same basis articulated in the order by the agency itself.'" El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Hum. Servs., 396 F.3d 1265, 1276 (D.C. Cir. 2005) (alteration in original) (quoting Burlington Truck Lines, Inc., 371 U.S. at 168–69, 83 S.Ct. 239).

## Analysis

Doe challenges both of the reasons USCIS gave for denying her petition: that the Texas Court judgment was not a "qualifying dependency declaration," and that the Secretary's consent was not warranted because the petition was not "bona fide." See Pl.'s Mot. at 16–32. Unsurprisingly, USCIS disputes Doe's contentions and argues that both of the reasons for denying her petition were sound. See Defs.' Cross-Mot. at 9–13. The Court will first assess USCIS's decision as to the dependency declaration before turning to the determination that the Secretary's consent was not warranted.

### I. Qualifying Dependency Declaration

To be eligible for SIJS, a petitioner must have "been declared dependent on a juvenile court located in the United States or" be "legally committed to, or placed under the custody of," a State agency or an appointed individual. 8 U.S.C. § 1101(a)(27)(J)(i). AAO denied Doe's petition on the basis that she had not satisfied this requirement, i.e., that she did not establish the existence of a "qualifying declaration of dependency or placement of custody." J.A. I at 4 (cleaned up). Doe now argues that this decision is not in accordance with law. Pl.'s Mot. at 16–20. The Court agrees.[5]

Doe claims that USCIS imposed an extra-statutory requirement by requiring the Texas Court to "specify the state child welfare law ... applied in reaching [the dependency] determination." Pl.'s Mot. at 16–18 (quoting J.A. I at 5). In so doing, she argues, USCIS also "contravene[ed] the collaborative state-federal framework" created by the INA by attempting to "dictate the contents of a state court's determination of a state law issue": dependency. Id. at 18–20. USCIS responds that Doe "cherry picks one statement in the AAO's decision" but ignores what AAO "was intending to make clear"—that Doe "failed to show the Texas court issued the declaratory judgment in connection with any ... juvenile dependency or child custody proceedings under Texas law." Defs.' Cross-Mot. at 12.

AAO concluded that the Texas Court's declaratory judgment was not a qualifying dependency determination because the court "did not specify the state child welfare law it applied." J.A. I at 5. But Doe argues the Texas Court did precisely that: it applied Texas child welfare law governing dependency declarations. Pl.'s Mot. at 18 n.10.[6] She contends, therefore, that USCIS's **\*57** conclusion to the contrary is contrary to law. Id. at 21; see id. at 16.

**\*\*5** Doe asked the Texas Court to declare her dependent on the court pursuant to the Texas Uniform Declaratory Judgments Act. J.A. II at 152. That Act permits "[a] court of record within its jurisdiction ... to declare rights, status, and other legal relations." Tex. Civ. Prac. & Rem. Code § 37.003(a). The Act is to "be liberally construed and administered" in order to "afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." Id. § 37.002(b). A person "whose rights, status, or other legal relations are affected by a statute ... may have determined any question of construction or validity arising under the ... statute" and may "obtain a declaration of rights ... thereunder," id. § 37.004(a), though this "enumeration[ ] ... do[es] not limit or restrict the exercise of the general

powers conferred" on the court "in any proceeding in which declaratory relief is sought and a judgment or decree will terminate the controversy or remove an uncertainty," id. § 37.003(c).

Doe sought a declaration of her dependency on the Texas Court in conjunction with declarations (1) that she was abused, neglected, or abandoned as defined by several Texas child welfare statutes, and (2) that reunification with her parents was not viable because of that abuse, neglect, or abandonment. See J.A. II at 185 (citing Tex. Fam Code §§ 152.102(1), 261.001(1), (4)). The Texas Court granted Doe a declaratory judgment on that basis. Id. at 185–86. Thus, the Texas Court both cited and applied Texas child welfare laws in declaring Doe dependent on the court. To require more—for example, to require that the declaratory judgment come during a custody determination—would go beyond the statutory requirement that Doe be "declared dependent on a juvenile court located in the United States," 8 U.S.C. § 1101(a)(27)(J)(i), or even the regulatory interpretation that the declaration be made "in accordance with state law governing such declarations of dependency," 8 C.F.R. § 204.11(c)(3).

USCIS responds that a State court's determinations must "match the requirements for SIJ status." Defs.' Cross-Mot. at 19 (quoting Budhathoki v. Nielsen, 898 F.3d 504, 509 (5th Cir. 2018)). In Budhathoki, the Fifth Circuit concluded that Texas court orders governing child support were not qualifying dependency declarations because "dependency" has a "specific federal meaning," and the presence of "formulaic language in ... state court orders" is not enough to satisfy the federal statutory requirement. 898 F.3d at 513, 517. AAO cited Budhathoki for this proposition, see J.A. I at 4 (quoting 898 F.3d at 513, 517), and USCIS now argues, based in part on Budhathoki, that even though Texas courts may enter declaratory judgments, "there is no 'dependency' on a Texas court absent the court addressing custody." Defs.' Cross-Mot. at 14–15.

But the statement in Budhathoki on which USCIS relies —that a qualifying dependency declaration must "address custody or at least supervision"—is dictum. See 898 F.3d at 513. The Fifth Circuit held only that Texas child support orders are not qualifying dependency declarations. See id. at 515; R.F.M. v. Nielsen, 365 F. Supp. 3d 350, 380 (S.D.N.Y. 2019) (explaining that Budhathoki addressed only Texas child support orders, which "did not purport **\*58** to be custody or dependency orders"). Furthermore, requiring a Texas dependency declaration to address custody is—at the least—in tension with the text of the statute, which provides that a petitioner is eligible for SIJS if she "has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under custody of, an agency or department ... or an individual or entity appointed by a State or juvenile court." 8 U.S.C. § 1101(a)(27)(J)(i) (emphasis added). Indeed, Budhathoki itself recognized (in the same paragraph) that "placing the child in the custody of someone or some entity is not required, but at least the person must be declared to be dependent on the court." 898 F.3d at 513 (emphasis added). Here, the Texas Court's declaratory judgment contained the requisite declaration that Doe was "dependent on a juvenile court located in the United States." 8 U.S.C. § 1101(a)(27)(J)(i); see J.A. II at 185. Doe therefore satisfied the statutory requirement.

**\*6** Finally, USCIS defends its decision by citing a provision of the USCIS Policy Manual, [7] which explains that a qualifying dependency declaration "should use language establishing that the specific judicial determinations were made under state law." J.A. I at 4–5 (citing 6 USCIS Policy Manual, pt. J, ch. 3 § A(1)). [8] The Manual adds that "[t]his requirement may be met if the order(s) cite those state law(s), or if the petitioner submits supplemental evidence which could include ... a copy of the petition with state law citations." 6 USCIS Policy Manual, pt. J, ch. 3, § A(1). Although USCIS claims that Doe "did not submit sufficient evidence to demonstrate that the declaratory judgment contained a qualifying declaration of juvenile dependency," Defs.' Cross-Mot. at 21–22, the Texas Court's declaratory judgment cites the Texas child welfare statutes under which the court concluded that Doe had been abused and neglected, see J.A. II at 185–86; further, Doe did submit her petition, which included the same citations, to USCIS after she received the Notice of Intent to Deny, see id. at 105–06. Thus, the Policy Manual does not support USCIS's decision that Doe's declaratory judgment was not a qualifying dependency declaration.

In sum, the Texas Court's declaration that Doe was "dependent upon this juvenile court in accordance with the laws of Texas," pursuant to the Texas Uniform Declaratory Judgments Act and several sections of the Texas Family Code governing abuse and neglect, J.A. II at 185–86, is a declaration that Doe is "dependent on a juvenile court located in the United States" for purposes of SIJS eligibility, see 8 U.S.C. § 1101(a)(27)(J)(i). The Texas Court's order did

precisely what is required by the statute, and USCIS's decision to the contrary was not in accordance with law.

## II. Secretary's Consent to Grant of SIJS

Doe also challenges the other basis for AAO's decision: that the Secretary's consent to her petition was not warranted because her petition was sought primarily to obtain an immigration benefit, i.e., that it was not bona fide. She claims that, because **\*59** USCIS "routinely granted SIJ petitions based on state court orders ... without regard to whether the state court, either in the opinion or at a hearing, referenced SIJ classification," the agency's denial of her petition on the basis that the Texas Court mentioned SIJS was an impermissible retroactive policy change. Pl.'s Mot. at 30. USCIS responds that AAO merely applied the same policy it has always applied in determining that Doe's petition was not bona fide. See Defs.' Cross-Mot. at 12, 16–18. The Court agrees with Doe: in concluding that her petition was not bona fide, the agency changed its position without offering an explanation. [9]

Only a petitioner "in whose case the Secretary of Homeland Security consents to the grant of" SIJS is entitled to a visa. 8 U.S.C. § 1101(a)(27)(J)(iii). USCIS interprets this consent function to mean that a petitioner is entitled to SIJS only if her petition is "bona fide, which means that the juvenile court order was sought to protect the child and provide relief from abuse ..., and not primarily to obtain an immigration benefit." 6 USCIS Policy Manual, pt. J, ch. 2, § D; see Defs.' Cross-Mot. at 7. This interpretation of the term "consent" originated in the conference committee's report on a prior version of the statute. See 6 USCIS Policy Manual, pt. J, ch. 2, § D n.30 (citing H.R. Rep. No. 105-405, at 130 (1997) (Conf. Rep.) ("Conference Report")). That report related to the 1998 amendment of § 1101(a)(27)(J), which added the requirement that the "Attorney General expressly consent[ ] to the dependency order serving as a precondition to the grant of [SIJS]." See Conference Report at 22; Act of Nov. 26, 1997, Pub. L. No. 105-119, § 113, 111 Stat. 2440, 2460. In 2008, the TVPRA removed the word "expressly" and also changed the object of the consent from "the dependency order" to the "grant of [SIJS]" itself. Pub. L. No. 110-457, § 235(d)(1)(B)(i), 122 Stat. 5044, 5079; see 8 U.S.C. § 1101(a)(27)(J)(iii). Despite those changes, USCIS continues to interpret the consent function as a test of whether a petition is "bona fide." [10]

**\*\*7** In the opinion denying Doe's petition, AAO concluded that there was "insufficient evidence to establish that [Doe's] Declaratory Judgment was sought to provide relief from parental mistreatment, as opposed to obtain an immigration benefit." J.A. I at 6. [11] AAO relied primarily on the **\*60** Texas Court's oral statement that Doe "was 'entitled to [SIJS] as defined by Section 101(a)(27)(J) of the Immigration and Naturalization [sic] Act,' " id. (quoting J.A. II at 128–29), which AAO interpreted to "suggest[ ] that the hearing, and subsequent Declaratory Judgment, principally concerned [Doe]'s eligibility for a benefit under federal immigration law," id. In the "Analysis" section of AAO's decision, although not in the section addressing the consent determination, AAO also noted that both the hearing transcript and the declaratory judgment "mirror[ ]" Doe's petition for a declaration of dependency. Id. at 4. [12]

But Doe claims that USCIS "routinely granted SIJ petitions based on state court orders" that, like hers, referred to SIJS. Pl.'s Mot. at 30. She cites the declaration of Richard Caldarone, who works as Litigation Counsel at the Tahirih Justice Center, which represented Doe at the Texas Court and during agency proceedings. See id.; Compl. Ex. 10 at 1 ("Caldarone Decl."); J.A. I at 8. Caldarone declared that he was "aware of several (unpublished) cases—all predating the denial in this case—in which USCIS granted SIJ status where the predicate state order was materially identical to the predicate order in [Doe]'s case." Caldarone Decl. ¶ 4. In response to this Court's Order on supplemental briefing, see Order of Nov. 10, 2021 [ECF No. 34] at 2, Doe provided additional argument, see Pl.'s Suppl. Mem. in Supp. of Pl.'s Mot. [ECF No. 36] ("Pl.'s Suppl. Mem.") at 2, and filed the unpublished immigration decisions and corresponding State court orders to which Mr. Caldarone referred, see generally Redacted Exs. to Pl.'s Suppl. Mem. [ECF No. 39] ("Suppl. Exs.").

These supplemental exhibits support Mr. Caldarone's claim, demonstrating that, at the time Doe filed her petition for SIJS, USCIS had indeed granted SIJS petitions on the basis of State court orders nearly identical to Doe's declaratory judgment. In Exhibits A and AA, for example, USCIS granted a petition for SIJS where a court in the Judicial District of Harris County, Texas (the same district as in Doe's case) declared that it was "a Juvenile Court ... as such term is defined in 8 C.F.R. § 204.11" and provided that the order could be "disclosed ... to support a petition for [SIJS] to ... [USCIS], pursuant to 8 U.S.C. § 1101(a)(27)(J)." Suppl. Exs. at 3, 5, 40. In some cases, the Texas courts "retain[ed]

jurisdiction" over petitions until the petitioners were "granted Special Immigrant Juvenile status ... as authorized by the INA." E.g., id. at 11, 15; accord id. at 18, 22–23, 26, 33, 37–38 (additional judgments declaring petitioners dependent upon Texas courts, referencing forthcoming SIJS petitions, and citing § 1101(a)(27)(J)); see also id. at 43, 45, 47, 50, 52, 54, 57 (corresponding grants of SIJS based upon those dependency declarations). Although not identical to the Texas Court's oral statement that Doe was **\*61** "entitled to" SIJS, these explicit references to SIJS would support a conclusion that the declaration was not bona fide just as much as in Doe's case.

**\*\*8** As an initial matter, USCIS argues that the Court should not consider Mr. Caldarone's declaration "because (1) [Doe] has not moved to supplement the administrative record and (2) the declaration is hearsay." Defs.' Reply Mem. in Supp. of Defs.' Cross-Mot. [ECF No. 30] at 10 n.4. [13] In response to Doe's supplemental filings, USCIS elaborated on its first argument, noting that Doe had not submitted any of the supplemental evidence to the agency and contending that she has not established a reason for the Court to consider it. See Defs.' Resp. to Pl.'s Suppl. Mem. [ECF No. 40] at 3–4. USCIS is correct that "[s]upplementation of the administrative record is only appropriate in exceptional or 'unusual' circumstances." Stand up for Cal.! v. U.S. Dep't of Interior, 71 F. Supp. 3d 109, 115 (D.D.C. 2014) (quoting City of Dania Beach v. FAA, 628 F.3d 581, 590 (D.C. Cir. 2010)). But this is precisely such an unusual circumstance. Doe's proffered evidence relates to her dispute with AAO's final decision, which she claims was based on an impermissible, and unannounced, retroactive policy change. See Pl.'s Suppl. Mem. at 7 ("Nor did [Doe] have any advance notice as to USCIS's new policy. Rather, in denying [Doe]'s SIJ petition, USCIS imposed requirements that were previously non-existent, as evidenced by the fact that USCIS routinely granted similar petitions."). Because Doe was unaware of the alleged retroactive policy change in the agency's final administrative decision, she was unaware of the need to submit prior decisions for the administrative record. Therefore, this case's facts fall within the circumstances where supplementation of the record is appropriate, and the Court will consider Doe's supplemental evidence that AAO's final decision constituted an impermissible retroactive policy change.

Although " '[t]he mere fact that the agency, by mistake or oversight, approved' a visa petition on one occasion does not create an automatic entitlement to the approval of a subsequent petition," the D.C. Circuit has explained that "a pattern of visa grants of sufficient magnitude could obligate the agency to provide a 'reasoned explanation for ... treating similar situations differently.' " Fogo de Chao (Holdings) Inc. v. U.S. Dep't of Homeland Sec., 769 F.3d 1127, 1144 (D.C. Cir. 2014) (alterations in original) (first quoting Royal Siam Corp. v. Chertoff, 484 F.3d 139, 148 (1st Cir. 2007); and then quoting ANR Pipeline Co., 71 F.3d at 901). In Fogo de Chao, the company alleged that the denial of a visa was "an abrupt and unexplained departure from prior agency practice granting such visas" without applicants satisfying certain evidentiary requirements; USCIS admitted that some such applications were granted but dismissed them as "material and gross error." Id. Although the D.C. Circuit did not decide what magnitude of visa grants would be required to trigger the agency's obligation to explain a change of course (because Fogo de Chao "never introduced any evidence corroborating [its] assertion"), it noted that an explanation "more reasoned than confessing a decade-long pattern of **\*62** 'material and gross error' " would be required. Id.

In this case, USCIS has provided no explanation at all —either to Doe or to the Court—for its apparent shift from consenting to grants of SIJS where the underlying dependency declaration referenced SIJS and/or cited the INA, see, e.g., Suppl. Exs. at 11, 15, to denying consent in Doe's case, see J.A. I at 6–7. The only basis in AAO's decision to conclude that Doe's petition was not bona fide is that the Texas Court "ultimately concluded that [Doe] was 'entitled to [SIJS].' " Id. at 6. AAO's conclusion thus represents a clear departure from the agency's pattern of consenting to SIJS based on similar State court orders, and the agency provided no "reasoned explanation for ... treating similar situations differently." Fogo de Chao, 769 F.3d at 1144 (citation omitted); see also Guam Contractors Ass'n v. Sessions, Civ. Case No. 16-00075, 2018 WL 525697, at \*7–8 (D. Guam Jan. 24, 2018) (concluding that employers stated a claim for relief where USCIS denied petitions "after years and sometimes decades of approvals on the same facts and statutory language").

**\*\*9** Although Fogo de Chao did not decide how many prior decisions trigger this reasoned-explanation requirement, Doe has demonstrated to the Court's satisfaction that, since 2012, USCIS granted its consent in at least eight cases where the underlying dependency declarations referred explicitly to SIJS. See, e.g., Suppl. Exs. at 26. Based on that years-long record, and on the strong similarity between those State court orders and the order at issue in Doe's case, the Court concludes

that the agency was required to acknowledge and explain its apparent change in position. See Fox Television, 556 U.S. at 515, 129 S.Ct. 1800; cf. Guam Contractors Ass'n, 2018 WL 525697, at *7–8. Further heightening the effect of the policy change, the agency's past record of granting petitions based on substantially similar state court orders engendered "serious reliance interests" on Doe's part. Encino Motorcars, 579 U.S. at 212, 136 S.Ct. 2117 ("[A]n agency must be cognizant that longstanding policies may have 'engendered serious reliance interests that must be taken into account.' " (quoting Fox Television, 556 U.S. at 515, 129 S.Ct. 1800)); see Pl.'s Mot. at 31 ("USCIS failed to account for the reliance interests of [Doe], who, of course, was unaware of the yet-to-be announced requirements at the time she filed her SIJ petition."). Doe sought a dependency declaration and factual findings about her abuse from the Texas Court, acting with the advice and assistance of her counsel, who were aware that similar dependency declarations had resulted in successful petitions in the past. See Caldarone Decl. ¶ 4; see, e.g., Suppl. Exs. at 11, 15, 19, 38 (noting representation of petitioners by Tahirih Justice Center). For the agency abruptly to change course and conclude that Doe's petition was not bona fide was a change in policy that required explanation. See Fox Television, 556 U.S. at 515, 129 S.Ct. 1800.

## Conclusion

For the foregoing reasons, the Court will grant Doe's motion for summary judgment and deny defendants' cross-motion. The Court will remand this matter to USCIS for further consideration and explanation consistent with this Memorandum Opinion. See Info Labs Inc. v. USCIS, Civ. A. No. 19-684 (RC), —— F.Supp.3d ——, ——  n.7, 2020 WL 1536251, at *5 n.7 (D.D.C. Mar. 31, 2020) ("When an agency action violates the APA, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.' " (quoting **\*63** Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985))). A separate Order will issue on this date.

**All Citations**

585 F.Supp.3d 49, 2022 WL 424978

---

## Footnotes

| | |
|---|---|
| 1 | USCIS regulations provide that an eligible immigrant must be "declared dependent upon a juvenile court located in the United States in accordance with state law governing such declarations of dependency." 8 C.F.R. § 204.11(c)(3). A "juvenile court" is "a court located in the United States having jurisdiction under State law to make judicial determinations about the custody and care of juveniles." Id. § 204.11(a). |
| 2 | Doe's removal proceedings are ongoing, with a merits hearing set for fall 2023. See Pl.'s Mot. at 9 n.6. |
| 3 | Doe's declaratory judgment petition cited Texas Family Code § 151.102(1), which was deleted from the Code in 2001. J.A. II at 153. In her motion, Doe amends the citation with brackets to read "§ 152.102(1)," a provision which defines "abandoned." See Pl.'s Mot. at 7. |
| 4 | Like Doe's petition for declaratory judgment, the Texas Court's decision cites § 151.102(1), rather than § 152.102(1). See J.A. II at 185. The judgment also cites § 251.001, J.A. II at 185—a section which does not exist in the Texas Family Code. In her petition for a declaratory judgment, Doe cited § 261.001(1), (4), which define "abuse" and "neglect," respectively. See J.A. II at 152. Because it is clear from the record that Doe and the Texas Court intended to refer to § 152.102(1) and § 261.001(1), (4), the Court will refer to those sections without brackets for the rest of this Opinion. |
| 5 | Because the Court concludes that USCIS's decision was contrary to law, it will not address Doe's arguments that the decision lacks an adequate explanation and is therefore arbitrary and capricious, see Pl.'s Mot. at 21–25, or that the agency ignored important principles of federalism and comity, id. at 28–29. |

| | |
|---|---|
| 6 | Although the thrust of Doe's argument is that USCIS improperly required the Texas Court to cite a state child welfare law, this is not an accurate description of the decision. AAO explained that the Texas Court entered its judgment under the Texas Declaratory Judgments Act, a statute that does "not describe juvenile dependency proceedings or otherwise address the care and custody of juveniles, instead providing for the general right to obtain a declaratory judgment." J.A. I at 5. That decision did not require the Texas Court to cite a child welfare law, but to apply a child welfare law in concluding that Doe was dependent on the court. |
| 7 | The Policy Manual, "the agency's centralized online repository for USCIS' immigration policies," is available at https://www.uscis.gov/policy-manual. |
| 8 | AAO cited Section A(2) of Chapter 2; the updated version of this provision is now found in Section A(1) of Chapter 3. See Pl.'s Mot. at 6 n.4; Defs.' Cross-Mot. at 21 (citing 6 USCIS Policy Manual, pt. J, ch. 2 § A(1), but quoting ch. 3 § A(1)). |
| 9 | Because the Court concludes that the agency impermissibly changed its policy without adequate explanation, it will not reach Doe's argument that the decision was arbitrary and capricious. See Pl.'s Mot. at 25. |
| 10 | In 2015, the Citizenship and Immigration Services Ombudsman recommended that USCIS "[i]nterpret the consent function consistently with [§ 1101(a)(27)(J)(iii)] by according greater deference to State court findings," namely by ending the practice of "determin[ing] whether the [State] court exercised its dependency jurisdiction in accordance with State law." Citizenship & Immigration Servs. Ombudsman, Ensuring Process Efficiency and Legal Sufficiency in Special Immigrant Juvenile Adjudications 1, 6 (2015), available at https://www.dhs.gov/sites/default/files/publications/CISOMB% 20SIJ% 20Recommendation% 202015_2.pdf (last accessed Feb. 11, 2022); see id. at 7–8 ("USCIS does not need to evaluate intent for initiating dependency court proceedings ... to determine whether it believes the [State] court made proper findings."). USCIS responded that it "continues to interpret its consent function in line with the congressional history from when the term 'consent' was first added to the statute." USCIS Dir., Response to Recommendations on Special Immigrant Juvenile Status Adjudications 3 (2016), available at https://www.dhs.gov/sites/default/files/publications/USCIS% 20Reponse% 20to% 20CISOMB% 20SIJ% 20Recommendation% 20R.pdf (last accessed Feb. 11, 2022). |
| 11 | AAO also concluded that consent was not warranted due to the lack of a qualifying dependency declaration, J.A. I at 6, but the Court has already rejected that determination and will not address it again here. |
| 12 | USCIS also cites a statement from the initial Notice of Denial pointing out "that [Doe's] attorney prepared the Declaratory Judgment signed by the" Texas Court. Defs.' Cross-Mot. at 18 (quoting J.A. I at 31). Because AAO did not rely on this fact in concluding that USCIS's consent was not warranted, the Court will not consider it. See El Rio, 396 F.3d at 1276 (explaining that "counsel's post hoc rationalizations are not a substitute" for an agency's contemporaneous reasoning). In any event, the fact that Doe's attorney prepared the order signifies nothing more than compliance with the Texas Court's local rules. See Rule 3.3.1 of the Civil Trial Division, Harris County District Courts ("Motions shall ... be accompanied by a proposed order granting the relief sought."). |
| 13 | The Court readily dismisses USCIS's contention that the declaration cannot be considered because it is hearsay. See Fed. R. Civ. P. 56(c)(1)(A), (c)(4) (at summary judgment, a party may cite "affidavits or declarations" to support its factual positions, so long as those materials are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant ... is competent to testify on the matters stated"); Caldarone Decl. ¶¶ 1–2, 4 (explaining the basis of Mr. Caldarone's knowledge). |

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.